SOUTHWICK, P.J.,
for the Court.
¶ 1. David Chisolm was convicted after a jury trial of timber theft. On appeal, he alleges error by the lower court in admitting certain evidence, in allowing impeachment of a prosecution witness, and in failing to grant a circumstantial evidence jury *683 instruction. Chisolm further challenges the weight and sufficiency of the evidence. We find no error and affirm.
STATEMENT OF FACTS
¶ 2. Evidence in the record supports the following account of events. In April 2000, David Chisolm and his nephew approached landowner Jimmy Zeigler seeking a right-of-way to cut timber on a parcel owned by someone else but surrounded by Zeigler property. Chisolm then offered to cut Zeigler’s scrub trees in the pasture adjacent to the other individual’s land. Zeigler stated that the only timber that he owned that was worth cutting was north of Toshiba Creek, and that he did not wish those trees cut. Chisolm’s knowledge and ignoring of that geographical restriction are the factual issues raised in this appeal.
¶3. Zeigler and his brother eventually agreed to allow Chisolm to cut the scrub timber in the pasture, with the prospect of an additional 75 acres of timber to be cut if Chisolm did a good job. The Zeiglers denied ever giving Chisolm permission to cut the acreage north of Toshiba Creek. Chisolm then employed two loggers, Mike Holmes and Mike Campbell, to cut the Zeiglers’ timber.
¶4. Campbell was assigned to cut the forbidden acreage north of the creek. Chisolm himself contacted an adjoining landowner to secure Campbell’s access. Campbell spent three days clearing the land, and then was prepared to move on to the Zeiglers’ 75 acre tract that could be cut if the Zeiglers were satisfied with the initial work.
¶ 5. Timber-cutter Holmes had been instructed to cut the pasture scrub. Zeigler visited the pasture as Holmes’ crew was working and discovered the work did not meet his expectations as large stumps were being left. Zeigler confronted Chi-solm about the quality of the work and discovered that the Toshiba Creek timber had been cut. Faced with the reality that the trees were down, Zeigler and his brother demanded payment for the Toshiba Creek timber, at the same rate agreed to for the pasture cutting. Despite Chi-solm’s assurances, the brothers never received payment beyond approximately $4,100, the value of the pasture scrub cut by Holmes. The Zeiglers then contacted the Mississippi Agricultural Theft Bureau. The resulting investigation led to Chi-solm’s indictment for timber theft.
DISCUSSION
¶ 6. Chisolm states nineteen issues in his brief. We find that his claims can be collapsed into five discrete arguments. We address each in turn.

1. Admissibility of evidence

¶ 7. Chisolm first attacks the lower court’s admission of several pieces of evidence. To a large extent, the admissibility of evidence lies within a trial court’s discretion. Weaver v. State, 713 So.2d 860, 865 (Miss.1997). This Court will employ a broader standard of review, however, if a legal standard has not been properly applied. Peterson v. State, 671 So.2d 647, 655-56 (Miss.1996). Still, we will not reverse unless the improper admission or exclusion of evidence adversely affected a substantial right of the accused. Id. at 656.
¶ 8. Chisolm contends that the court erred in admitting Exhibits S-2, S-2A, and S-2B, which were various settlement sheets that demonstrated the value of the timber that was cut. The settlement sheets were admitted through the testimony of Investigator John Stewart. The investigator was not a proper sponsor of these documents which had been prepared by others. The documents were not certi *684 fied and were not self-authenticating. See M.R.E. 803(6) & 902(11).
¶ 9. Despite being allowed in through the wrong witness, the information in the documents duplicated witness testimony regarding the same facts. Mike Campbell testified about the sawmills and purchasers to which he had delivered his cuttings, and stated their value. Mike Holmes similarly explained where the timber he cut went. Tommy Reid, a timber dealer who coordinated purchasers for Chisolm, further testified to values he paid to the loggers. These facts were all established through independent witness testimony before each analyzed the appropriate evidentiary document. Competent testimony on the subject of alleged hearsay renders the error harmless. Kolberg v. State, 829 So.2d 29, 64 (Miss.2002).
¶ 10. Chisolm further claims that check stubs introduced as Exhibit S-2G did not represent the best evidence of checks written from a purchaser to Chi-solm; they also were not introduced through a witness who could authenticate them. He contends that the original cheeks, or proper duplicates, were required to be introduced. What has been called the “best evidence” rule is now reduced to a requirement that the original or a satisfactory duplicate of a writing is required when it is necessary to “prove the content of a writing_” M.R.E. 1002 & 1003. The issue to which the checks related was the amount of payment that was made for the improperly cut timber. The State needed to prove that the timber was worth more than $250. Facts may be proven through a variety of relevant evidence. Regardless of the hearsay issue regarding the cheek stubs, the value of the timber was proven through testimony to be substantially more than $250.

2. Elements of the indictment

¶ 11. Chisolm next contends that the prosecution failed to establish a prima fa-cie case to support the conviction. The elements as set out in the indictment were three-fold. The State was required to prove Chisolm’s intent, the act of removal, and the value of the merchantable timber. Miss.Code Ann. § 97-17-59(2) (Rev.2000). Chisolm does not deny that Mike Campbell, at Chisolm’s direction, cut and removed the Toshiba Creek timber. He challenges only the proof of intent and of value.
¶ 12. Chisolm’s primary argument regarding value appears to be that the victim, Jimmy Zeigler, could not quantify how much Chisolm owed him for the cut timber. What Chisolm’s argument does not account for, however, is other proof of the timber’s value offered to the jury. Mike Campbell, Chisolm’s logger who cut Toshiba Creek, testified that he carried logs cut from the tract to at least five named mills. He testified that he was paid through Tommy Reid and that the timber sold for approximately $21,000. Reid himself testified to the $21,000 figure for timber harvested by Campbell. Zeig-ler’s failure to assign value to the timber removed is therefore irrelevant. The jury had both testimony and documentary evidence of timber value in excess of $250.
¶ 13. As to intent, the record contains conflicting evidence. The issue was whether Chisolm, knowing that he did not have authority to do so, intentionally committed the acts. Chisolm testified that Phillip Zeigler told him that if there were logs north of the creek, that he should cut them. However, Phillip Zeigler denied giving permission to anybody to cut timber north of Toshiba Creek. Jimmy Zeigler testified that after he told Chisolm “that we didn’t want to sell the timber back there [north of the creek], he kind of asked *685 me a little bit about it at the time, you know, about how much timber was back there, you know, land wise and all. And I told him we didn’t want to sell it, you know, didn’t have any intentions of selling that timber and it didn’t really matter how much land was back there because we weren’t selling it anyway.”
¶ 14. Other witnesses testified to Chi-solm’s acting as if he had the authority to cut in this location. That only confirms what Chisolm admitted, that he intentionally had the timber cut that was north of the creek. What he disputed was that he did so without permission. This was a simple jury issue, based on the credibility of the Zeiglers compared to that of Chi-solm. The jury apparently believed that permission was not given and that therefore the cutting was unlawful.
¶ 15. Credibility is a matter for the jury. Robert v. State, 821 So.2d 812, 817 (Miss.2002). We find that evidence from which criminal intent could be inferred was presented.

3. Witness impeachment

¶ 16. Chisolm next attacks the lower court’s decision to allow the prosecution to impeach and treat as hostile a witness called during its case in chief. Jim White, Chisolm’s nephew, was called to testify to his knowledge of what timber was authorized by the Zeiglers for cutting. However, on the stand, White began to vacillate. He stated that the Zeiglers had simply said that they did not want to have the timber north of Toshiba Creek cut at that time. Then in response to the question of whether permission to cut that land was given, White said, “Not at that time, no.”
¶ 17. Following a bench conference in which the district attorney made claims about what he had expected White to say, the trial judge granted permission to treat White as a hostile witness. The prosecutor was able to offer some impeachment of White’s trial testimony.
¶ 18. The decision to allow leading questions is one properly reserved to the discretion of the trial court, and we will not disturb it absent an abuse of discretion. Neal v. State, 805 So.2d 520, 527 (Miss.2002). The State argues that treating White as a hostile witness was proper under an evidentiary rule which provides for leading questions to a “witness identified with an adverse party.” M.R.E. 611(c). White was the defendant’s nephew. This rule was not mentioned at trial, yet we find that the lower court properly could have found White to fall within the category of being identified with the other party. Neal, 805 So.2d at 527. There was no abuse of discretion.

i. Jury instruction S-l

¶ 19. Chisolm challenges the lower court’s failure to grant a circumstantial evidence instruction. Circumstantial evidence instructions, which provide that the State must exclude every reasonable hypothesis consistent with innocence, are necessary only when the prosecution can produce neither an eyewitness nor a confession to the gravamen of the offense. Stringfellow v. State, 595 So.2d 1320, 1322 (Miss.1992). Here, direct evidence was offered to establish the value of the timber. Chisolm admitted to the removal of the cuttings from Toshiba Creek. When “intent alone is sought to be proved by circumstantial evidence, no instruction on circumstantial evidence is necessary.” Alexander v. State, 749 So.2d 1031, 1037 (Miss.1999).

5. Weight and sufficiency of the evidence

¶ 20. Chisolm asserts that the lower court erred in denying his requests for *686 directed verdict or new trial. Such motions constitute challenges to evidentiary sufficiency and weight.
¶ 21. When reviewing the denial of an accused’s motion for directed verdict, we consider all evidence in a light favorable to the verdict, discarding all evidence favoring the defendant. Taylor v. State, 656 So.2d 104, 107 (Miss.1995). We will reverse only upon a finding that no reasonable, hypothetical juror would find guilt. Tait v. State, 669 So.2d 85, 88 (Miss.1996). The record contains evidence that Chisolm ignored clear withholding of permission to cut this timber. There was undisputed evidence of the removal of timber, and testimony and documentary evidence of the timber’s value. Viewing this evidence and the attendant inferences in favor of the conviction, we do not find that the jury’s verdict was unreasonable.
¶ 22. Chisolm further challenges his conviction as contrary to the overwhelming weight of the evidence. Here, our analysis shifts in perspective from whether the verdict is supported in law and fact to whether the verdict is clearly unjust. We will not set aside a verdict and order a new trial unless to allow the verdict to stand would constitute an “unconscionable injustice.” Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). The basis for this admittedly high standard is our deference to the jury’s verdict. Burrell v. State, 613 So.2d 1186, 1191 (Miss.1993).
¶ 23. Chisolm asserts that the “atmosphere” of the trial was incurably prejudicial to him. The evidence in the record before us does not support his claim of injustice.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF YAZOO COUNTY OF CONVICTION OF TIMBER THEFT AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THREE YEARS SUSPENDED IS HEREBY AFFIRMED. COSTS ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.