LEE, P.J.,
for the Court.
FACTS AND PROCEDURAL HISTORY
¶ 1. On March 20, 2005, in the Grenada County Jail, Kenneth • Kendall and Sajid Tyler were in the same cell. Prior to lockdown, fellow inmates Antonio Conley, Eric Bullin and James Kinsey entered Kendall’s cell. An altercation ensued over cigarettes stolen by Kendall. Conley and Bullin began hitting and kicking Kendall on various parts of Kendall’s body, including his head. There was testimony that this assault lasted between fifteen and thirty minutes.
¶ 2. Approximately fifteen minutes after the assault, a guard noticed Kendall’s injuries. Kendall told the guard that four men had assaulted him. Around the same time, Kendall fell to the ground and, after attempts at resuscitation by medical staff, died. Kendall died from swelling of the brain and brain stem herniation, caused by blunt force trauma to his head.
¶ 3. On June 28, 2005, Conley and Bullin were indicted for the murder of Kendall. Bullin ultimately pled guilty to manslaughter. On August 11, 2005, a jury in the Grenada County Circuit Court found Conley guilty of murder. Conley was sentenced to serve a term of life in prison in the custody of the Mississippi Department of Corrections. Conley now appeals to this Court asserting that the trial court erred in refusing to appoint an independent medical examiner and that the jury verdict was contrary to the overwhelming weight of the evidence.
DISCUSSION
I. DID THE TRIAL COURT ERR IN FAILING TO APPOINT AN INDEPENDENT MEDICAL EXAMINER?
¶ 4. In his first issue on appeal, Conley argues that the trial court erred in not appointing an independent medical examiner to review the cause of Kendall’s death. Two days prior to trial Conley had filed a motion asking the trial court to appoint a medical professional to ascertain whether Conley was responsible for Kendall’s death. Conley states that this was crucial in preparing his defense that, although he admitted beating Kendall, he never intended to kill Kendall. In reviewing the trial court’s denial of medical expert assistance, this Court must find an abuse of discretion such that Conley was denied due process resulting in a fundamentally unfair trial. Brink v. State, 888 So.2d 437, 448(¶ 32) (Miss.Ct.App.2004).
1Í 5. During the hearing on Conley’s motion, the trial court asked Conley’s attorney, James Vanfce, certain questions in regards to whether an independent medical examiner was necessary. In response to Vance’s statement that there could be an intervening cause of death since Kendall did not die immediately after the assault, the following occurred:
BY THE COURT: Did you find anything in the autopsy report that would indicate there was anything other than this?
BY MR. VANCE: No, sir. I didn’t.
BY THE COURT: Did it indicate any presence of any drugs?
BY MR. VANCE: No, sir.
BY THE COURT: Did it indicate anything such as a heart attack or something like that?
*464 BY MR. VANCE: No, sir. I don’t recall in looking through the autopsy that it was anything like that.
[[Image here]]
BY THE COURT: Without some, without some basis for it — I mean if you got the independent expert, all they would be able to do would be to look at the autopsy report at this particular time. Other than that, somebody would have to exhume the body, and I’m not going to exhume a body until there is some basis for doing that. Therefore one, I find it is not timely filed, and two, I don’t think there has been any basis for me to order this as I see no need for it based on the information that I have. So that is overruled.
¶ 6. We cannot find that there was an abuse of discretion by the trial court since Conley appears to base his argument on a hope that another medical expert would find another cause of death rather than having any specific evidence to support his defense. Kendall was severely beaten, with significant bruising on his head, neck and back as well as between thirty and forty blunt force trauma injuries on his body. Furthermore, Dr. Steven Hayne, a forensic pathologist, testified that “[i]nca-pacitation in some cases could occur immediately, or ... could be delayed for a period of time. Certainly an hour could occur before the swelling developed at a point where unconsciousness would develop.” This issue is without merit.
II. WAS THE VERDICT CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 7. In his other issue on appeal, Conley states that the jury verdict was contrary to the overwhelming weight of the evidence. However, Conley’s sole assertion is that he should have been charged with manslaughter as he never meant to kill Kendall. Conley asks this Court to reverse his murder conviction and to remand for resentencing for the crime of manslaughter. Our standard of review concerning the overwhelming weight of the evidence is well settled: “[W]e will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844(¶ 18) (Miss.2005). The appellate court sits as a hypothetical “thirteenth juror.” Id. As such, the Court weighs the evidence “in the light most favorable to the verdict.” Id. If, in this position, the Court disagrees with the verdict. of the jury, “the proper remedy is to grant a new trial.” Id.
¶ 8. Mississippi Code Annotated section 97-3~19(l)(b) (Rev.2006) states that a person is guilty of murder “[w]hen done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual.” Manslaughter is defined as all other killings of a human being “by the act, procurement, or culpable negligence of another, and without authority of law....” Miss.Code Ann. § 97-3-47 (Rev.2006). We note that the jury in the case sub judice was given a manslaughter instruction.
¶ 9. Conley’ cites to Tait v. State, 669 So.2d 85 (Miss.1996), where our supreme court reversed a murder conviction and remanded for sentencing for the crime of manslaughter. The supreme court found the accidental shooting by Tait only amounted to culpable negligence. Id. at 87-88. We fail to see how the accidental discharge of a gun equates to an intentional and violent assault.
¶ 10. Depraved heart murder evidences a greater degree of recklessness than manslaughter. *465 Steele v. State, 852 So.2d 78, 80(¶ 10) (Miss.Ct.App.2003). From the facts, we cannot find that allowing the guilty verdict to stand would sanction an unconscionable injustice. In fact, the evidence shows the reckless and brutal nature of the crime. Conley admitted to beating and stomping Kendall. A forensic scientist with the Mississippi Crime Laboratory matched numerous bruise patterns on Kendall’s back with a pattern on the bottom of one of Conley’s shoes. There was testimony that Kendall was struck so hard his head hit the wall of the cell. There was also testimony that Kendall did not fight back. At one point Kendall attempted to get help from the guards but was pulled back into the cell whereupon Conley and others continued beating him. This blunt force trauma caused Kendall’s brain to swell and led to his death a short time later. All of this occurred over a pack of cigarettes.
¶ 11. We affirm the guilty verdict.
¶ 12. THE JUDGMENT OF THE GRENADA COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO GRENADA COUNTY.
KING, C.J., MYERS, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.