CARLTON, J.,
dissenting:
¶ 45. I dissent from the majority’s opinion and respectfully submit that I would reverse and remand the present case for a new trial. I specifically write as to issue three in the majority’s opinion that concerns the trial court’s denial of Dante Evans’s request for the appointment of an expert on post-traumatic stress disorder (PTSD). I find this issue to be case dis-positive due to its impact upon Evans’s ability to prepare and present his defense. Evans was denied a fair trial and due process as a result of the trial court’s denial of his request for a court-appointed expert to assist in presenting his defense. I submit that Evans should have been allowed funds to hire an expert in the field of psychiatry to testify as to the impact of his previously diagnosed PTSD on his mental state at the time he committed the underlying offense in order to allow for the adequate preparation and presentation of his theory of imperfect self-defense[6] to the jury-
¶ 46. Without the assistance needed by an expert regarding his PTSD, Evans was unable to present his theory of imperfect self-defense to show that he lacked the requisite mental state for murder. The record shows that Evans was subjected to years of violent domestic and child abuse resulting in a previous diagnosis of PTSD. The record further reflects that due to his current home environment, Evans lived in a constant state of hostility, fear, and abuse. The record revealed that Evans’s current home environment was permeated with violent outbursts and physical attacks upon Evans, a minor, by a man who possessed legal authority, legal custody, and legal control over him, his father and legal guardian. Without the requested psychiatric expert assistance, Evans was unable to explore or present sufficiently the necessary evidence to show how these tumultuous circumstances impacted his mental state at the time that he committed the offense to support his theory of imperfect self-defense.
¶ 47. Additionally, the record shows that the court appointed an expert, a psychologist, who evaluated Evans’s competency to stand trial and discovered that Evans had been previously diagnosed in *1070 2001[7] with PTSD. However, this expert lacked the qualifications needed to testify as to the effect of PTSD on Evans’s mental state at the time of the offense for which he was indicted. In fact, the psychologist verbally recommended to the defense that the defense hire an expert in the field of psychiatry to aid in Evans’s defense by testifying as to the impact of PTSD on one’s mental state.
¶ 48. Therefore, I submit that the majority erred in finding that since the record failed to support Evans’s theory of imperfect self-defense, then the trial court’s denial of Evans’s request to appoint an expert on PTSD was not error. I contend, in contrast, that the record only lacked sufficient evidence warranting an imperfect self-defense jury instruction because the trial court denied Evans’s request for the expert assistance needed to present his theory of imperfect self-defense and, more specifically, the issue related to his mental state at the time of the offense. Thus, I assert that the trial court abused its discretion in denying Evans’s request for a court-appointed expert, and in doing so, the trial court violated Evans’s due-process rights. The court’s denial of Evans’s request for expert assistance denied Evans of his right to a fair trial because Evans, an indigent minor, lacked the funds necessary to hire an expert to testify as to the effects of PTSD on his mental state. See Johnson v. State, 476 So.2d 1195, 1202 (Miss.1985) (quoting Ruffin v. State, 447 So.2d 113, 118 (Miss.1984)) (“[T]he doctrine of fundamental fairness, guaranteed by the Due Process Clause of the Constitution, at times requires authorization for appointment of a particular expert or investigator.”). See also State v. Janes, 121 Wash.2d 220, 850 P.2d 495, 503 (1993) (quoting Steven R. Hicks, Admissibility of Expert Testimony on the Psychology of the Battered Child, 11 L. & Psychol. Rev. 103,104 (1987)) (“Without the aid of expert testimony on the psychology of battered children, the jury will be unable to appreciate the manner in which the abused child differs from the unabused child.... Expert testimony can help the jury understand the sense of powerlessness, fear, and anxiety which permeate the battered child’s world.”).
¶ 49. After reviewing the record, I contend that Evans, through the psychologist’s testimony, who was appointed by the court to determine Evans’s competency to stand trial, met his burden of showing that a substantial need existed for a court-appointed expert to testify as to the effects of PTSD.[8] Howell v. State, 989 So.2d 372, 390 (¶ 60) (Miss.2008) (quoting Ruffin, 447 So.2d at 118) (“An indigent’s right to defense expenses is conditioned upon a showing that such expenses are needed to prepare and present an adequate defense.”); Hunt v. State, 687 So.2d 1154, 1161 (Miss.1996); Butler v. State, 608 So.2d 314, 321 (Miss.1992) (providing that expert assistance should be granted upon a showing of substantial need); Fisher v. City of Eupora, 587 So.2d 878, 883-84 (Miss.1991).
¶ 50. In closing, I recognize that appellate courts utilize the following standard of review when considering this issue: “to reverse, the trial court’s denial of expert assistance must be an abuse of discretion *1071 ‘so egregious as to deny the defendant due process and where the defendant’s trial was thereby rendered fundamentally unfair.’” Hunt, 687 So.2d at 1161 (quoting Fisher, 587 So.2d at 883). The Mississippi Supreme Court has acknowledged that courts are to consider the following factors in deciding whether a defendant was denied a fair trial when the trial court failed to appoint a requested expert: (1) the degree of access the defendant has to the State’s expert; (2) whether those experts were available for rigorous cross-examination; and (3) the lack of prejudice or incompetence by the State’s expert. Fisher, 587 So.2d at 883 (citing Johnson v. State, 476 So.2d 1195, 1203 (Miss.1985)).
¶ 51. After reviewing the factors articulated in Fisher, as noted above, I submit that Evans was denied a fair trial by the trial court’s denial of his request for an expert in psychiatry. The record in the present case shows that the court-appointed expert, a psychologist, failed to possess the requisite qualifications to address the impact that the previously diagnosed PTSD had upon Evans’s mental state at the time that he committed the acts that killed his father, and the defense possessed no access to a state psychiatric expert in the area of PTSD. The trial court’s denial of Evans’s requested jury instruction on the theory of imperfect self-defense shows that prejudice occurred to Evans’s case since the denial of the expert assistance prevented Evans from presenting evidence necessary to support such an instruction. Expert assistance could also have shown how the prior beatings and abuse of Evans by his father were relevant to his mental state at the time that he committed the offense. See generally M.R.E. 803(3) (Allowing statements to be admitted into court as admissible hearsay if it is “[a] statement of the declarant’s then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health....”)). I, therefore, submit that the trial court erred in denying Evans’s request to have an expert appointed to present evidence pertaining to his mental state at the time that he committed the underlying offense.[9]
¶ 52. Additionally, I recognize that the United States Supreme Court in Ake v. Oklahoma, 470 U.S. 68, 77, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), delineated three factors to be utilized in making a determination as to whether a defendant is entitled to an expert’s assistance in the defense of his case. Richardson v. State, 767 So.2d 195, 199 (¶ 19) (Miss.2000). These factors include: “[(]1) the private interest that will be affected by the action of the State; [ (]2) the governmental interest that will be affected if the safeguard is to be provided; and [ (]3) the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided.” Id. Like the Fisher factors, the standard set forth in Ake, when applied to this case, also demonstrate that Evans provided the required substantial showing of a specific need for expert assistance to present his defense related to his mental state when the offense was committed due to his PTSD and current hostile environment. The record shows that no substitute psy *1072 chiatric expert was provided, and because of this, Evans suffered an erroneous deprivation of his ability to present a defense. See Jordan v. McKenna, 573 So.2d 1371, 1377 (Miss.1990);[10] Norris v. State, 490 So.2d 839, 843 (Miss.1986) (Experts testified that Norris suffered from PTSD, wherein he relived the emotional trauma of Vietnam in “flashbacks” and that PTSD could remain latent until triggered causing the flashback to previous trauma. Experts disagreed, however, as to whether the defendant understood right from wrong at the time of the offense). See also Penry v. Lynaugh, 492 U.S. 302, 324, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), abrogated on other grounds by Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (noting that “mental retardation and history of abuse is thus a two-edged sword: it may diminish [the petitioner’s] blameworthiness for [the] crime even as it indicates that there is a probability that he will be dangerous in the future”).
¶ 53. Every accused has a right to present his or her theory of defense to the jury, see Chinn v. State, 958 So.2d 1223, 1225 (¶ 13) (Miss.2007); Wade v. State, 748 So.2d 771, 774-75 (¶¶ 8-13) (Miss.1999), and for that reason, I would reverse Evans’s conviction and remand this case to the trial court for further proceedings consistent with this opinion.
BARNES AND ISHEE, JJ„ JOIN THIS OPINION.

. Under a theory of imperfect self-defense, "an intentional killing may be considered manslaughter if done without malice but under a bona fide (but unfounded) belief that it was necessary to prevent great bodily harm." Moore v. State, 859 So.2d 379, 383 (¶ 9) (Miss.2003) (quoting Wade v. State, 748 So.2d 771, 775 (¶ 12) (Miss.1999)). Section 97-3-35 defines manslaughter as "[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense. ...” Miss.Code Ann. § 97-3-35 (Rev. 2006). The Mississippi Supreme Court has defined "heat of passion” as "a state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror." Nolan v. State, 61 So.3d 887, 892, 2011 WL 1797005 *5 (¶ 26) (Miss.2011) (quoting Tait v. State, 669 So.2d 85, 89 (Miss.1996)). The issues surrounding immediacy are questions of fact and must be resolved based upon the specific facts of each case and the defendant’s condition or temperament. Id. at 90-91 (¶ 30) (citing Hartfield v. State, 186 Miss. 75, 189 So. 530, 532 (1939); Haley v. State, 123 Miss. 87, 85 So. 129, 131—32 (1920)).

. I pause to note that the psychologist came upon records showing that Evans had been diagnosed with PTSD prior to the his father’s demise, which occurred in 2007.

. The record reveals that the defense proffered to the trial court that the court-appointed psychologist provided a written report of her examination of Evans and also verbally informed the defense that she recommended that Dr. Gerald O’Brien, a psychiatrist, be retained by the defense as an expert on PTSD.

. The defense explained to the trial court the need for a psychiatrist to testify as to the effects of PTSD on Evans’s mental state to prove their theory of imperfect self-defense. The defense informed the trial court that the court-appointed psychologist came upon records showing that Evans had been diagnosed at a very young age with PTSD. The defense also explained to the trial court that the court-appointed psychologist verbally recommended to the defense that Dr. O’Brien be hired.

. Jordan is a civil case that involved a rape victim who developed PTSD. Jordan, 573 at 1377. At trial, a psychiatric PTSD expert testified that those afflicted with PTSD often times have numbed emotions and restricted emotional ranges. Id. The PTSD expert also explained that those suffering from PTSD are always on the lookout for danger and physically relive their trauma when in stressful situations. Id. Jordan testified that she endured night mares, carried a gun, and lived in constant fear. Id.